| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | 1:23-cr-00013-WAL-EAH |
| **v.** | |
| VICTOR HUGO CANNEGIETER, II, | |
| Defendant. | |

TO:    Evan Rikhye, Esq., AUSA
       Yasir Sadat, Esq., AUSA
       Gabriel J. Villegas, Esq., AFPD

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Government's Motion for Detention of Defendant Victor Hugo Cannegieter, II. Dkt. No. 11. On July 18, 2023, the Court held a hearing on the motion. The Government was represented by Evan Rikhye, Esq., AUSA, and the Defendant was represented by Gabriel J. Villegas, Esq., AFPD. The Defendant, Victor Hugo Cannegieter, II, also was present. This Order sets forth the reasons for the Court denying the motion and ordering Cannegieter's release on conditions.

## FACTUAL BACKGROUND[1]

In July 2023, a Grand Jury returned an Indictment as to Cannegieter charging him with illegal possession of machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). Dkt. No. 1. This charge arose from a series of incidents on June 7, 2023 at and near

---

[1] For the purposes of this Memorandum Opinion, the facts are taken from the testimony of Special Agent Justin Mace with the Bureau of Alcohol, Tobacco, and Firearms at the detention hearing. He was not present during the events and based his testimony primarily on interviews conducted with Castaways bartender, Andrew Allenbach, and two Castaways patrons involved in altercations with Cannegieter, Kirby Jackson and Tanya McPhillips.

Castaways, on the East End of St. Croix. Allegedly, Cannegieter arrived on the evening of June 7, 2023 around 5:00 p.m. in an intoxicated state. Soon after his arrival, he engaged in two verbal altercations with patrons at Castaways. Because of this behavior, Cannegieter was asked to leave by the bartender, Andrew Allenbach. Cannegieter left, but he returned to Castaways and encountered two other bar patrons in the front parking area, Kirby Jackson and Tanya McPhillips, whom he had known socially for several years. Both women, Jackson and McPhillips, were unable to leave their vehicle because Cannegieter would not let them exit and was screaming at them. An argument ensued, and Allenbach came out to assist the women. Allenbach again asked Cannegieter to leave, and Cannegieter got into his parked vehicle and sped away from Castaways. Cannegieter returned to Castaways approximately ten to fifteen minutes later, approaching from the back entrance. He shoved McPhillips to the ground and a physical altercation ensued. Jackson heard the row, and came to aid McPhillips. Allenbach also saw the fight, and came to break it up. Allenbach asked Cannegieter to leave for a third time. Cannegieter left for about ten minutes, and then returned.

Following Cannegieter's return to Castaways for what would be the final time, he approached Jackson, who was sitting at the bar, from behind, and punched her in the back of the head. McPhillips jumped on Cannegieter and tried to pull him away from Jackson. Jackson also joined the struggle, and all three began fighting on the ground. At some point during the scuffle, Jackson yelled that there was a gun. Allenbach, who witnessed the fight and heard Jackson's statement, jumped on Cannegieter, at which time he saw Cannegieter pull a Glock firearm from his waistband. Allenbach grabbed the firearm out of Cannegieter's hand as Cannegieter pulled away. Allenbach heard a thud and witnessed an extended magazine fall to the ground. Allenbach grabbed both, and placed the pistol and

the extended magazine in separate gutters[2] across the bar. Cannegieter yelled at Allenbach to return his gun. Allenbach told Cannegieter that his gun was in the bushes, and that he did not have it; Cannegieter responded by threatening to get his chopper and mow the place down.

At this point, the Virgin Islands Police Department ("VIPD") arrived at Castaways. Apparently, the VIPD had received a call about machine-gun fire in Coakley Bay, an apartment complex approximately 0.25 miles from Castaways. In the course of responding to the call and canvassing the area, the VIPD drove past Castaways, at which point Allenbach flagged down a marked unit and told the VIPD about the altercation. Cannegieter was either near his car in the parking lot or walking away from the VIPD shortly after they arrived. Castaways' owner, Jesse Smith, told the VIPD that a firearm was involved, and when asked about the location of the firearm, Allenbach walked a VIPD Officer to the gutter to retrieve the firearm. Smith and Allenbach told the VIPD that Cannegieter possessed the firearm; the VIPD then asked Cannegieter if he had a firearms license. Cannegieter inquired why the VIPD was asking him about a license, and the VIPD detained Cannegieter. The VIPD also walked around Cannegieter's car, where they observed an extended magazine and a spent shell casing on the driver's seat through the half-opened window. The VIPD searched the car and found an empty 12-round Glock magazine on the driver's side floor, the aforementioned extended magazine with eleven rounds on the driver's seat, and 307 grams of marijuana on the floor in a jar. Additionally, Cannegieter had set down a backpack on his car; the VIPD searched the backpack and found an additional Glock magazine loaded with eleven rounds and six loose rounds. The

---

[2] According to Agent Mace's testimony, the gutters are sort of overhangs in the roof area of the bar at Castaways.

VIPD also examined the Glock gun recovered from Castaways, which had a machine gun conversion attached to it.

Cannegieter was arrested and charged in the Superior Court on June 8, 2023. *See People of the Virgin Islands v. Victor Hugo Cannegieter II*, Case No. 23XPO7192. He was released on June 9, 2023.

Cannegieter was later arrested on the federal charge on July 13, 2023 and had his Initial Appearance and Arraignment before this Court on July 14, 2023. At Cannegieter's Initial Appearance, the Government orally moved to detain. However, it did not cite a specific statutory provision but instead stated that Cannegieter posed a serious danger to the community and a flight risk. The Government also requested that he be ordered not to contact any witnesses.[3] It further requested that the Court set the detention hearing during the week of July 17, 2023. Cannegieter, through his court-appointed counsel, Gabriel J. Villegas, Esq., AFPD, stated that he was prepared to proceed with the detention hearing immediately, however, the Government was not. Attorney Villegas advised the Court that he did not need to file a written response to the Government's motion to detain, when filed, and that he would have live witnesses for the scheduled detention hearing. The Court ordered the Government to file its motion for detention by July 17, 2023 and set the hearing for July 18, 2023. Dkt. No. 4.

---

[3] Because a judicial officer may hold a detention hearing where the case involves "a serious risk that [a defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," this statement implied that the Government was seeking detention under this provision. 18 U.S.C. § 3142(f)(2).

The Government moved for detention, cursorily stating that it sought detention "on the basis of danger to the community, pursuant to 18 U.S.C. § 3142(e)."[4] Dkt. No. 11.

At the hearing, as a preliminary matter, Attorney Villegas argued that the Government's motion was insufficient, because the general citation to § 3142(e) did not adequately apprise Cannegieter of the basis for the Government's motion for detention and raised due process and notice concerns. However, Attorney Villegas noted that he presumed that the Government was seeking detention under § 3142(f)(1)(E), which provides that a detention hearing is available in a crime that involves the possession or use of a firearm and on the basis of his dangerousness. The Government presented the testimony of Agent Mace as to events on June 7, 2023 and a video of him test-firing the firearm. Agent Mace additionally testified that he asked Jackson about retaliation or threats, at which point Jackson informed him that she had been approached by Cannegieter's friend and former roommate, David Brogan, who told her that she better erase the tapes of the incident at Castaways, though there was no evidence that any such tapes existed.[5]

Cannegieter proposed three third-party custodians at the hearing who testified on his behalf. The first, Shane Dalton, testified that he has known Cannegieter for approximately ten years, both in a personal and professional capacity. Dalton has employed Cannegieter in his solar panel business for the last three years, where they

---

[4] 18 U.S.C. § 3142(e) simply provides that detention is warranted after a hearing if the judicial officer finds that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of any other person and the community. It also lays out the types of cases giving rise to a presumption that no such condition or combination of conditions exist.

[5] Agent Mace testified, and the Government conceded, that Agent Mace had no proof that Brogan acted on behalf of Cannegieter, directly or indirectly, in contacting Jackson.

work closely together for 30-50 hours weekly. Dalton testified that Cannegieter could continue to work with him if released with conditions, and that he was personally present at all times when the two were working. Further, he was willing to be a third-party custodian and understood what it meant to be a third-party custodian. He would report Cannegieter for a violation of any conditions—including if he smoked marijuana or failed to appear for work, if those conditions were imposed. He also offered to take Cannegieter to his court appearances, and stated that he believed Cannegieter would listen to him. He did not post bail in the Superior Court case, because Cannegieter's family had done so.

His sister Evelyn de la Cruz—another proposed third-party custodian—also testified that she lived in a home that she owns free and clear in Mount Welcome, St. Croix, with her husband, daughter, mother, and Cannegieter (who had lived there for five years). She further testified that she worked from home and was home almost all of the time. She estimated her house was worth approximately $200,000. The Court notes that, while she had reservations about posting her property as surety for the bond, she eventually testified that, if she had to post the property for Cannegieter's release, she would do so. She was willing to be a third-party custodian, and understood that that responsibility would include ensuring that Cannegieter was present at all Court hearings and reporting Cannegieter for violating any conditions including smoking marijuana. She asserted that Cannegieter respected and listened to her.

Finally, Cannegieter's mother, Beatriz de la Cruz, testified that she also lived at the same house as her son in Mt. Welcome, St. Croix. She was willing to be a third-party custodian and would make sure that Cannegieter followed the Court's orders.[6] She did

---

[6] Beatriz de la Cruz serves as Cannegieter's third-party custodian in the Superior Court case.

not work and did not leave the house frequently, besides for errands two to three times per week. She stated that she received a monthly pension that she could use for Cannegieter's release. She testified that her son listened to her and she would report him to the Court or Probation if he did not follow the conditions of release. On cross-examination, the Government established that Ms. De la Cruz had never seen her son smoke marijuana, had not seen her son with any firearms, had never seen weapons in their shared living space, and had never been in her son's vehicle. Ms. De la Cruz additionally testified that she had never seen her son drink alcohol.

Following the witnesses' testimony, the attorneys argued their respective positions. The Government argued that it had moved for detention on the basis of Cannegieter's dangerousness and no amount of family members and/or third-party custodians could mitigate that potential danger to individuals and the community. Regarding the nature and circumstances of the offense, Cannegieter was charged with possession of a machine gun, which was a serious crime generally,[7] and, in this instance, went beyond simple possession. He possessed a large amount of ammunition and was involved in a violent confrontation in which he attempted to brandish a weapon. This dangerous and egregious conduct posed a danger to the witnesses in the incident and the community at large. As to the weight of the evidence, the Government had three independent, civilian witnesses willing to testify that Cannegieter: possessed the gun on his person, appeared intoxicated, and threatened to shoot up the restaurant. Further, Cannegieter made admissions about the gun's ownership when he demanded it back in

---

[7] Upon later questioning, the Government confirmed that it was not arguing that there was something inherent in the charge that supported a finding of dangerousness, but rather that the nature of the offense and Cannegieter's particular conduct supported such a finding.

front of the witnesses and others. Regarding his history and characteristics, though he had no prior felony convictions, his history indicated struggles with substance abuse and involvement with firearms, and, when combined with his violent tendencies and the instant conduct, meant that this factor weighed in favor of detention.[8] The fourth factor, his dangerousness, was evident from the conduct on June 7, 2023—including extreme intoxication, making threats, unprovoked physical assault, and attempting to brandish his firearm. Upon questioning from the Court, the Government argued that the fact that Cannegieter had been on release for weeks on the Superior Court's conditions without incident was unavailing given the different legal frameworks governing bail in federal and territorial court. Further, Cannegieter's past compliance with those conditions should not be given significant weight where the Court and the Government had no knowledge about the intensity of the Superior Court's monitoring protocol. The Court also inquired about the impact of Cannegieter's intoxication in assessing his dangerousness to the Community. The Government responded that, while intoxication played a role in the events of June 7th, Cannegieter took dangerous actions—including procuring the illegal weapon and ammunition—during periods of (presumed) sobriety. Upon further questioning from the Court as to whether any conditions of release existed to assure the safety of community, the Government first responded that none existed. It later contended that detention was the best option, and that, even if the Court fashioned

---

[8] The Government argued that the report of machine-gun fire at Coakley Bay also tended to show that Cannegieter was dangerous. However, Agent Mace testified that he had no proof that Cannegieter actually fired the firearm at Coakley Bay. Thereafter, the Government conceded that no evidence linked Cannegieter to the discharge of any weapon that night.

conditions of release that could be imposed to mitigate the threat Cannegieter posed, it believed such conditions would be insufficient.

Attorney Villegas first referenced the Court's discussion of dangerousness to the community in another case, *United States v. Liz,* 3:23-cr-00006-RAM-EAH, a case involving illegal firearms and large amounts of ammunition. He noted that, in the opinion, the Court heavily considered Liz's past which included: past charges of attempted first degree murder and introducing contraband to a jail; a conviction for assault; and a physical confrontation with VIPD officers. Attorney Villegas contended that Cannegieter had no such history here; his history indicated addiction, rather than any violent propensity. This factor weighed heavily in favor of release. Further, he argued that the situation escalated solely because of Cannegieter's intoxication, and that imposing a condition of release precluding Cannegieter from drinking alcohol would eliminate the chances of any future similar incidents. He additionally noted that Cannegieter had strong ties to the community and many appropriate individuals willing to serve, jointly or individually, as third-party custodians who could ensure that Cannegieter complied with the conditions of release. Finally, he argued that Cannegieter's compliance with the Superior Court's conditions of pretrial release without incident for weeks evidenced that he would adhere to this Court's conditions of release and would not pose a danger to the community. In sum then, the factors weighed against detention, and conditions could be imposed that would eliminate any potential risk to the community.

## DISCUSSION

### I.   Applicable Legal Standards

It is well established that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S.

739, 755 (1987). The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 et seq., governs pretrial detention and specifies when a Court must hold a detention hearing, and no automatic right to a detention hearing and pretrial detention exists. *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (noting that, "as stated in the legislative history 'the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.'" (quoting S. Rep. No. 98-225, at 20 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3203.)). *See also United States v. Ploof,* 851 F.2d 7, 10 (1st Cir. 1988) ("In other words, § 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings [to the instances described in subsection (f)].").

A judicial officer must hold a hearing "upon motion of the attorney for the Government" in cases involving certain circumstances giving rise to a rebuttable presumption of detention.[9] 18 U.S.C. § 3142(f)(1). A judicial officer may hold a detention hearing either sua sponte or upon Government motion where the case involves "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* § 3142(f)(2). Only in those limited circumstances elucidated in § 3142(f) may the Court hold a detention hearing and order

---

[9] Certain cases raise a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, inter alia, where there is probable cause to believe that the defendant committed an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more, or an offense under 18 U.S.C. § 924(c). *See* 18 U.S.C. §§ 3142(e)(3)(A), (B). If a defendant is charged with committing an offense enumerated in § 3142(e)(3), that is sufficient to establish probable cause triggering the rebuttable presumption. *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). This rebuttable presumption is not at issue here.

pretrial detention. *See Himler*, 797 at 160 ("If Congress had intended to authorize pretrial detention in all cases where recidivism appears likely it could easily have done so. The legislative history of the Bail Reform Act of 1984 makes clear that to minimize the possibility of a constitutional challenge, the drafters aimed toward a narrowly-drafted statute with the pretrial detention provision addressed to the danger from 'a small but identifiable group of particularly dangerous defendants.'" (quoting S. Rep. No. 98-225, at 6-7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189.)).

The Act further provides that a defendant must be released unless, after a hearing, the court finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142 § (e)(1).  The Act provides a number of conditions of release that a judicial officer may impose to assure the defendant's appearance and safety of the community. 18 U.S.C. § 3142(c).

In making this determination of whether any conditions of release can reasonably assure a defendant's appearance and the safety of others, the Court must consider the factors set out in 18 U.S.C. § 3142(g):

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person including—

(A)     the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)     whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "To justify pretrial detention, the [G]overnment must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence." *United States v. Kanawati,* No. 2008-7, 2008 WL 1969964, at *2 (D.V.I. May 5, 2008) (citing *Himler,* 797 F.2d at 160-61; *United States v. Traitz,* 807 F.2d 322, 324 (3d Cir. 1986)). "A preponderance of the evidence is defined as '[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is evidence which as a whole shows that the fact sought to be proved is more probable than not.'" *Greenwich Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730, 733 (3d Cir. 1993) (quoting *Black's Law Dictionary* 1182 (6th ed. 1990)). Clear and convincing is "a more stringent standard than proof by a preponderance of the evidence." *United States v. Askari*, 222 F. App'x 115, 119 (3d Cir. 2007) (citing *United States v. Brennan*, 326 F.3d 176, 200 n.7 (3d Cir. 2003)). The Third Circuit has approved definitions of clear and convincing evidence as evidence "which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue" and "evidence sufficient to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.... It is not necessary that the evidence be uncontradicted ... provided it carries conviction to the mind or carries a clear conviction of its truth[.]" *Id.* (internal quotation marks and alterations omitted). If the Government fails to meet its burden of proof at the hearing, the defendant must be released. *United States v. Soriano*

*Nunez*, 928 F.3d 240, 244 (3d Cir. 2019) ("The B[ail] R[eform] A[ct] thus requires the

pretrial release of defendants unless [the statutory requirements are met].").

## II.    Consideration of Detention

As an initial matter, the Court agrees with Attorney Villegas's contention that the

Government's motion for detention was insufficient. As discussed, at the Initial

Appearance, the Government moved for detention without citing a specific statutory

provision, arguing that Cannegieter posed both a serious danger to the community and a

flight risk and insinuating that he may be a threat to witnesses. In its motion, the

Government simply wrote that it sought detention "on the basis of danger to the

community, pursuant to 18 U.S.C. § 3142(e)." Dkt. No. 11. But § 3142(e) specifies the

crimes which give rise to a rebuttable presumption of detention; however, as the

Government conceded at the detention hearing, this case is not a presumption case. Thus,

their general citation, which did not match the reasons for detention proffered at the

Initial Appearance, provided no clear notice to Cannegieter of the basis on which the

Government sought detention. The Government's motion also failed to adequately show

this Court that it was definitively entitled to a detention hearing. However, as Attorney

Villegas noted, based on the crime charged, both Cannegieter and this Court were able to

deduce that the Government sought detention under § 3142(f)(1)(E) based on his

dangerousness to the community. Further, because Cannegieter's alleged crime involved

possession of a firearm, it meets one of the seven circumstances elucidated in § 3142(f),

making it eligible for a hearing and consideration of pretrial detention. Thus, the Court

determined that it was required to hold a detention hearing upon the Government's

motion and to determine whether detention was appropriate.

Having determined that that the Court was required to hold a detention hearing, it is well-established that a Court may only order detention if the judicial officer finds that "*no condition of combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.*" 18 U.S.C. § 3142(e)(1). In the instant matter, the Government was concerned about Cannegieter's dangerousness to the community and individuals; it stated that it did not believe that Cannegieter posed a flight risk. In determining whether there are no conditions or combination of conditions to assure the safety of the community and individuals, the Court considers the § 3142(g) factors. 18 U.S.C. § 3142(e). The Court will do so now.

## A.  Nature and Circumstances of the Offense

Under the first factor, the nature and circumstances of the offense, a court should consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The District Court has recognized that firearms offenses are serious, which weighs against release. *See United States v. Wrensford*, No. 2012-0012, 2012 WL 6028628, at *4 (D.V.I. Dec. 4, 2012) (citing *United States v. Carey*, 578  F. Supp. 2d 190, 191-92 (D. Me. 2008) for the proposition that firearms offenses are factors against release)). In the instant matter, Cannegieter was charged with possession of a machine gun, a serious crime which obviously involves a firearm. Further, the crime carries a maximum term of incarceration of ten years, which speaks to the seriousness of the nature of the offense. *See* 18 U.S.C. § 924(a)(2); *United States v. Matthias,* No. 2016-0025, 2017 WL 1536430, at *16 (D.V.I. Apr. 27, 2017)*,* 2017 WL 1536430, at *16  ("The seriousness of these charges is demonstrated in part by the substantial sentences they carry . . . .")

But, pursuant to the Act, in *Wrensford* and other cases, courts do not consider the offense in isolation. In *Wrensford*, the District Court examined the circumstances of the firearms' use or discharge and the other crimes charged. *Wrensford*, 2012 WL 6028628, at *4 (finding that the factor weighed in favor of detention based on the nature of the charges— including murder—and the manner in which the victim was allegedly murdered and the fact that the incident occurred in a populated area); *Matthias,* 2017 WL 1536430, at *16  (finding that the factor weighed in favor of detention based on the seriousness of the charges, including attempted premeditated murder, and where the defendant fired multiple unprovoked shots at an occupied car and evinced a blatant disregard for human life and the law); *United States v. Carino,* No. 2016-0008, 2016 WL 6023099, at *9 (D.V.I. Oct. 13, 2016) (finding that the factor weighed in favor of detention based on the serious nature of the crimes—including attempted premeditated murder and possession of marijuana with intent to distribute— and the manner in which defendant shot the victim, at close range and in a public area in the presence of the victim's minor child); *United States v. Flanders*, No. 2010-29, 2010 WL 4054442, at *8 (D.V.I. Oct. 15, 2010) (finding that the factor weighed in favor of detention where one of the six crimes charged, murder, was a crime of violence and was carried out with a firearm, with brutality, in the vicinity of a school).

While the Court recognizes that Cannegieter did not just possess a firearm, but instead converted the firearm to a machine gun, this is essentially one fact that the Court may consider in determining the seriousness of the offense. However, the Court also recognizes that the circumstances of this case are dissimilar from other cases involving firearms where the nature and circumstances of the offense favored detention. First, this case, unlike the others cited herein, involved only the singular charge of possession of a

firearm. The other cases involved firearms offenses as well as other serious offenses and crimes of violence. Second, absolutely no evidence exists linking Cannegieter to the discharge of the firearm in public.  Nevertheless, because the District Court has previously held that firearm offenses are serious and favor detention, on balance and taking into account the specific circumstances of this case, this factor weighs slightly in favor of detention.

### B.  Weight of the Evidence

As to the weight of the evidence, on the one hand, Agent Mace's testimony is based on interviews of three witnesses who claim that Cannegieter possessed a firearm on the night of the incident. Further, Cannegieter allegedly made admissions as to his ownership when he repeatedly demanded his gun back in front of witnesses. Agent Mace's testimony, at this stage, provides the Government's case with significant strength to establish that Cannegieter possessed a machine gun. Courts have found that, where the evidence is substantial, the factor militates in favor of detention. *See, e.g.*, *Carino,* 2016 WL 6023099, at *9; *Flanders*, 2010 WL 4054442, at * 8; *Kanawati*, 2008 WL 1969964, at *3.

However, the Act explicitly states that "[n]othing in [18 U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Thus, the Court is duty-bound to recognize the fact that a defendant is presumed innocent. In conformity with that duty, the Court "cannot overlook the fact that Defendant is presumed innocent," and even though he is cognizant of the Government's evidence against him, he has maintained that innocence and his constitutional right to a jury trial. *United States v. Gilbert*, 511 F. Supp. 3d 669, 678 (E.D. Pa. 2021). Keeping these competing considerations in mind—the weight of the evidence for the specific charge Cannegieter

faces based on the evidence adduced at the detention hearing and the mandate to maintain a defendant's presumption of innocence— in assessing this factor, in totality, the Court finds that it weighs in favor of detention.

### C.  Defendant's History and Characteristics

This Court must also examine a defendant's history and characteristics, a factor which considers, among other things, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct[.]" 18 U.S.C. § 3142(g)(3)(A). Cannegieter has strong ties to the community. He was born and raised in St. Croix. He already lives with both his sister and mother, who are willing to serve as third-party custodians and ensure that he complies with his conditions of release. He works for a solar panel company for 30-50 hours a week, and his employer testified that he would be willing to serve as a third-party custodian and stay with him at all times during work. Cannegieter's ties to the community and to family "are factors that would weigh against detention." *Carino*, 2016 WL 6032099, at *9 (citing *Wrensford*, 2012 WL 6028628, at *4). He has no prior felony convictions, suggesting that he is not dangerous. *See United States v. Sterling*, 459 F. Supp. 3d 673, 679 (E.D. Pa. 2020). He appears to possibly have a history of substance abuse, but this can be mitigated by a condition forbidding him from using alcohol or drugs.

Additionally, the best evidence of his ability to comply with conditions of release comes from the fact that he has done so without incident for the past few weeks. *See e.g., Wrensford*, 2012 WL 6028628, at *5 (finding that past conduct of complying with conditions of release set by the Superior Court was relevant to the Court's consideration of the history and characteristics of the defendant). Courts have found that a defendant's

prior history warranted detention where that history showed an unwillingness or inability to refrain from the offense conduct and to comply with restrictions on his conduct, or that a defendant was unable to follow rules and orders of the Court. *See United States v. Hollerich*, No. 2:22-cr-225-1, 2022 WL 16806156, at *3 (W.D. Pa. Nov. 8, 2022); *United States v. Roper*, No. 3:19-cr-00315, 2021 WL 1222775, at *5 (M.D. Tenn. Apr. 1, 2021); *United States v. Terron*, No. 3:18-cr-00413, 2020 WL 2404618, at *3 (M.D. Pa. May 12, 2020). That is not the case here. Therefore, this factor weighs heavily against detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The final § 3142(g) factor, the nature and seriousness of danger to the community, "requires the court to assess the totality of the evidence presented." *United States v. Santiago-Pagan*, No. 1:08-cr-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009). "It necessarily entails a 'prediction of the detainee's likely future behavior.'" *Id.* (quoting *United States v. Perry,* 788 F.2d 100, 114 (3d. Cir. 1986)). As this Court has reasoned, the first factor, the nature and circumstances of the offense, weighed slightly in favor of detention. Similarly, the weight of the evidence weighed in favor of detention. However, his history and characteristics weighed heavily in favor of release. Applicable to this factor, in assessing Cannegieter's likely future behavior the Court looks to the following facts which weigh against detention:

1. Cannegieter does not have any prior felony convictions or a violent history supporting a finding that he will behave violently in the future.

2. His history indicates that he has complied with conditions of release from another court without incident. *See Wrensford*, 2012 WL 6028628, at *5

(finding that past conduct of complying with conditions of release set by the Superior Court was relevant to the Court's consideration of the history and characteristics of the defendant). His track record of compliance with the Superior Court conditions of release, which were less stringent and did not place him on home detention or limit his alcohol intake,[10] provides this Court with a foundation to believe that he will comply with its conditions.

3. The Office of Probation assessed Cannegieter's eligibility for pretrial release and determined that he was in Risk Category Two and was eligible for release with conditions.

4. The Office of Probation also inspected Cannegieter's home, which revealed no firearms or drugs present. Thus, no indication exists that Cannegieter has access to additional weapons and may pose a danger to the community on this basis.

5. This Court believes that the conditions of release it has crafted, as discussed further below, will drastically reduce the nature and seriousness of any danger Cannegieter may pose to any individual or the community.

Therefore, the Court finds that this factor does not weigh in favor of detention.

**III.   Whether Any Conditions Would Assure the Safety of Individuals and the Community**

The Court may only deprive an individual of his right to liberty when there are "*no condition of combination of conditions [that] will reasonably assure . . . the safety of any other person and the community . . . .*" 18 U.S.C. § 3142(e). Strikingly, here, the Government argued that detention would be the best option but recognized that

---

[10] The Superior Court's Pretrial Release Order was provided to this Court.

conditions of release existed that could assure the safety of individuals and the community, though it still believed those conditions would be insufficient. However, where there are such conditions that can reasonably assure the safety of any other person and the community, the Court is duty-bound to release the defendant and construct those conditions to ensure the individual's constitutional right to be free from unnecessary pretrial detention. After careful review, the Court has determined that there are conditions that can permit Cannegieter to be placed on pretrial release, including, but not limited to, the following:

- Placement in the custody of three third-party custodians;

- Home detention, restricting Cannegieter to his residence at all times, except for employment, medical treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance;

- GPS location monitoring;

- Reporting to Probation and Court appearances as ordered;

- No contact, direct or indirect, with witnesses and victims;

- Prohibition on possession and use of any firearm or destructive device;

- Prohibition on consuming any alcohol; and

- Prohibition on possessing or using a narcotic drug or other controlled substances, unless prescribed by a licensed medical practitioner;

- Submission to random testing for a prohibited substance;

- No travel without Court permission.

Both the Order Setting Conditions of Release, Dkt. No. 17, and the Amended Order Setting Conditions of Release,[11] Dkt. No. 23, contain, inter alia, these conditions. Cannegieter's placement on home detention with GPS monitoring and his restriction from use of drugs or alcohol, along with the other conditions, will reasonably ensure that he does not pose a danger to others or the community.

## CONCLUSION

The Government moved to detain Cannegieter arguing that he was a danger to individuals and the community. As previously noted, there is a general presumption that a defendant shall be released pending trial unless the Government proves, by clear and convincing evidence at a detention hearing, that the defendant should be detained on this basis. In assessing the factors under § 3142(g), and for the reasons outlined in this opinion, the Court concludes that there are conditions or a set of conditions that can be imposed to ensure the safety of individuals and the community.

Accordingly, the premises considered, and the Court otherwise being duly advised, it is hereby **ORDERED** that the Government's motion for detention pending trial, Dkt. No. 11, is **DENIED**.

ENTER:

Dated: July 28, 2023                    /s/ Emile A. Henderson III
                                         EMILE A. HENDERSON III
                                         U.S. MAGISTRATE JUDGE

---

[11] The only difference between the two orders is that the Amended Order contains the signatures of the third-party custodians.